IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RICHARD WATKINS,              §
                             §
     Plaintiff,              §
                             §
v.                           §       CIVIL ACTION NO. H-03-5698
                             §
TEXAS DEPARTMENT OF CRIMINAL  §
JUSTICE, GARY JOHNSON, JANIE  §
COCKRELL, and JOHN DOE,       §
                             §
     Defendants.             §

MEMORANDUM AND ORDER

Pending is Defendants Texas Department of Criminal Justice's, Gary Johnson's, and Janie Cockrell's Motion for Summary Judgment (Document No. 39).  After having carefully reviewed the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted.

I.  Background

Plaintiff Richard Watkins ("Plaintiff"), who is black, had worked for Defendant Texas Department of Criminal Justice (TDCJ) for a little over 20 years until he retired in February, 2005.  In 1997, Plaintiff's supervisor, Defendant Janie Cockrell ("Cockrell"), at Plaintiff's request recommended that Plaintiff be transferred from the Senior Warden position at the Choice Moore Unit in Bonham, to the Senior Warden position at the Holliday Unit ("the Unit") in Huntsville.  Defendant Gary Johnson ("Johnson")

approved the transfer, which also brought with it a pay increase for Plaintiff. From 1997 until his retirement, Plaintiff continued as Senior Warden at the Holliday Unit. Plaintiff alleges that beginning in August, 1999, TDCJ at times discriminated and retaliated against him, and created a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff also brings state law defamation and intentional infliction of emotional distress claims against Defendants Johnson, the former Executive Director of TDCJ, and Cockrell, the former Institutional Division Director of TDCJ (collectively "Defendants").

In February, 2002, an incident occurred at the Unit in conjunction with TDCJ's Prison for a Day Program (the "Prison incident")--a program where probationers are assigned to various units and are treated as prisoners for one day. Document No. 13 ¶ 21. A participating probationer at Plaintiff's Unit complained that he was assaulted by prisoners during the event, and that he was mistreated by prisoners "in the presence of TDCJ officers and county probation officers." Document No. 39 ex. G. The probationer's allegations prompted an investigation by the Office of the Inspector General (OIG), and Plaintiff--who was not present at the Unit that day--ultimately was reprimanded for "substandard duty performance" because he "failed to ensure that his staff was appropriately trained in the Prison for a Day Program and failed to

follow the progress of such program." Document No. 39 ex. B-2.[1]
Plaintiff received a one-month paid, disciplinary probation for the
Prison incident, during October/November, 2002. <u>Id.</u> This was in
the lowest range of possible punishments for a Level Four offense
under Plaintiff's circumstances. Plaintiff later sent correspon-
dence to various supervisors and requested assistance in
overturning the disciplinary, but to no avail. Document No. 13
¶ 24 and ex. C-9.[2] Plaintiff alleges that around this same time

---

[1] Plaintiff in his affidavit describes the Prison incident's
investigation and hearing (the "Prison hearing") as follows:

> I was never provided a copy of any prison for a day
> program book nor any other information which indicated
> that the Agency had an official policy in regards to the
> Prison for a Day Program.  The Prison for a Day program
> was adopted as a policy by TDCJ in June of 2002, four
> months after the incident at the Holliday Unit.  6 and ½
> months later the investigation was completed and I was
> shocked and humiliated to find out that I was being
> sustained against.  I sought documents relating to this
> investigation but I was denied them. . . . I attempted in
> a variety of ways to have this disciplinary overturned.
> I filed a grievance and it was summarily denied. . . . My
> disciplinary was heard by Leslie Woods, who was selected
> by Janie Cockrell but who was not the closest Regional
> Director to the facility where the incident occurred.  It
> had always been TDCJ policy to select the closest
> Regional Director to hear such complaints.  When I went
> to the hearing on or about October 16, 2002 Woods
> actually refused to read the information I brought with
> me on the day of the hearing to present my defense.
> . . . [I] complained about this being discriminatory and
> being treated differently.  The reprimand form defamed me
> and injured my reputation as a Warden and a Professional.

Document No. 48 ex. 1 ¶ 10.

[2] Plaintiff argues that the probation was wrongfully imposed
because "[h]e was disciplined for violating a non-existent policy

his white Regional Director Jimmy Alford ("Alford") ordered him not to leave the Unit without his permission, not even for a lunch break, even though other wardens routinely took lunch breaks.  Id. ¶ 25.  In January, 2003, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination and retaliation.  Document No. 48 ex. 23.[3]

In a period of one month, August, 2003, Plaintiff applied for four promotions, which were denied, and these, along with the Prison incident, have emerged as the focal points of his discrimination claims.  Document No. 13 ¶ 30; Document No. 48 ex. 1 ¶¶ 11-13; Document No. 39 ex. I at 102.  Then, in 2005, Plaintiff retired because he felt that "[h]e had no choice but to resign"

_____

for an incident that occurred when he was off duty," and Plaintiff also points to irregularities in the OIG investigation of the Prison incident.  Document No. 47 ¶ 4.  Plaintiff submits the affidavit of Jimmie Davis ("Davis"), the investigator of the Prison incident, who avers that Dennis Rhoten ("Rhoten"), OIG Director, "instructed me that I was going to find [Plaintiff] guilty of violating TDCJ policy."  Document No. 48 ex. 1a ¶ 5.  Davis avers that he was required to re-investigate the Prison incident three times until he found Plaintiff guilty of violating TDCJ policy. Id.  Davis avers that Rhoten instructed him not to investigate a "similar allegation" of misconduct that occurred in another facility, the Segovia Unit, but Davis provides no other details about the circumstances of that incident.  Id. ¶ 6.  To the extent that Defendants object to Rhoten's statements as inadmissible hearsay, see Document No. 54 n.7, this objection is overruled.  See FED. R. EVID. 801(d)(2)(D).

[3]  In April and June, 2003, three white employees in Plaintiff's Unit filed three separate suits against TDCJ in state court alleging, among other things, various race and sex discrimination committed by Plaintiff in the administration of his Unit.  See Document No. 39 ex. H.

4

when TDCJ decided to transfer him from the Holliday Unit to another unit also to serve as Senior Warden.   Document No. 47 ¶ 4.

Defendants now move for summary judgment on all of Plaintiff's claims on the following grounds: (1) Plaintiff cannot rebut TDCJ's legitimate, non-discriminatory reason for Plaintiff's promotion denials because he cannot show that he was "clearly more qualified" than the candidates that were promoted by TDCJ; (2) Plaintiff cannot establish a prima facie case of retaliation because he cannot show (a) that he suffered an adverse employment action, and (b) that there is a causal connection between any protected conduct and TDCJ's employment decisions; (3) even if Plaintiff makes a prima facie case of retaliation, he cannot rebut TDCJ's legitimate reasons for its employment decisions; (4) Plaintiff cannot make a prima facie case of a hostile work environment; (5) Plaintiff's state law intentional infliction of emotional distress claim is preempted by Plaintiff's Title VII claims, and, alternately, Plaintiff cannot raise a fact issue that Johnson and Cockrell engaged in extreme and outrageous conduct; and (6) Johnson and Cockrell are entitled to a qualified privilege or official immunity on Plaintiff's defamation claim.

## II.   Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-

Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).   On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

## III.  Discussion

### A.  Plaintiff's Objections

As an initial matter, Plaintiff makes numerous objections to Defendants' summary judgment evidence.  See Document No. 47 at 12-14.

1.  Plaintiff's challenges to the authenticity of various documents referenced in and attached to the witness affidavits are OVERRULED.  The attachments are properly authenticated under Fed. R. Evid. 901(b)(1).  See FED. R. EVID. 901(b)(1) (document may be authenticated through the "[t]estimony [of a witness with knowledge] that a matter is what it is claimed to be.").

2.  Plaintiff objects on hearsay grounds to Document No. 39 ex. A-3 (applicant log), and ex. C-4 (new superintendent announcement).  Because Defendants have failed to show that these statements are not hearsay or fall within an applicable hearsay exception, Plaintiff's hearsay objections to Document No. 39

7

ex. A-3 and ex. C-4 are SUSTAINED.  The remainder of Plaintiff's hearsay objections lack merit and are OVERRULED.

3.    The remainder of Plaintiff's objections fail adequately to set forth any legal basis for exclusion under the Federal Rules of Evidence and are therefore OVERRULED.

B.    <u>TDCJ's Motion for Summary Judgment</u>

Title VII proscribes an employer from terminating or otherwise discriminating against any individual because of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff."  <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004).  Intentional discrimination can be established through either direct or circumstantial evidence.  <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 219 (5th Cir. 2001).  Because Plaintiff presents no direct evidence of discrimination, his claim is analyzed using the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973).  <u>Id.</u>  Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case of discrimination.  <u>Id.</u>

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000).  The

burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)).  If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

1.   Failure to Promote

a.   Plaintiff's Prima Facie Case

Plaintiff contends that he suffered race discrimination when TDCJ did not promote him to five positions: a Regional Director position in 2000; and the four positions that he applied for all in August, 2003:  Superintendent of Schools, Director of Correctional Institutions, Human Resources Director, and Regional Director in 2003.  To establish a prima facie case of discriminatory failure to promote, Plaintiff must show that: (1) he is a member of a protected class; (2) he sought and was qualified for an available position; (3) he was not selected for that position; and either (4a) the employer awarded the position to someone outside the

9

protected class, or (4b) after the employer rejected the plaintiff, the employer continued to seek applicants with plaintiff's qualifications.  *See* Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680-81 (5th Cir. 2001); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996).  *See also* Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004).  Here, it is undisputed that Plaintiff, who is black, is a member of a protected class.

Plaintiff first challenges his promotion denial for the Regional Director position in 2000.[4]  Apart from being time barred, the uncontroverted summary judgment evidence is that Plaintiff missed the deadline for applying for this position.  After the deadline passed, the position was no longer open or available for applications.  Plaintiff therefore failed to make a prima facie showing that he sought an "available" position.[5]  Plaintiff has neither alleged nor presented any evidence to rebut Defendants' legitimate, non-discriminatory reason for not considering Plaintiff for this position--namely, his failure to apply for the position while it was open for applications.

Plaintiff also complains of not being promoted to any of four positions for which he applied in August 2003.  First, the job

---

[4] This is a stale claim that was not mentioned in Plaintiff's January, 2003, EEOC charge.

[5] Cockrell--the decision maker who was responsible for filling this position--avers that "I cannot recall ever making an exception for any applicant for promotion who missed an application deadline."  Document No. 39 ex. B ¶ 11, ex. C-1.

posting and the position description for Superintendent of the Windham School District specify that the minimum qualification for the job requires a Superintendent Certificate issued by the Texas State Board for Educator Certification--a qualification that Plaintiff did not have, and that the successful applicant did have. Document No. 39 ex. C-2, C-5; Document No. 48 ex. 1 ¶ 13. As such, because Plaintiff's qualifications were facially insufficient to satisfy the minimum criteria for the Superintendent position, Plaintiff has not established a prima facie case of discrimination. *See* <u>Davis</u>, 383 F.3d at 318. *See also* <u>McDonald v. Entergy Operations, Inc.</u>, 75 Fed. Appx. 279, 280 (5th Cir. Sept. 16, 2003) (unpublished).

Plaintiff did present evidence that he sought and was qualified for the other three positions, Director of Correctional Institutions, Human Resources Director, and Regional Director; he was not selected for those positions; and that TDCJ awarded those positions to persons outside the protected class. Plaintiff therefore has made a required prima facie showing with respect to these three positions.

### b.   <u>TDCJ's Legitimate, Non-Discriminatory Reasons</u>

TDCJ argues that it promoted candidates to these three positions "who were the best qualified--via their experience and likelihood to succeed--for the positions." Document No. 39 at 18.

First, with respect to the Regional Director position, Dretke avers that he promoted Richard Thaler ("Thaler") because "I believed and still believe that Mr. Thaler was the strongest candidate," in part because of his experience in managing a large Level IV prison facility "where we house some of the most violent or difficult offenders." Id. ex. D ¶ 4.  Plaintiff, by contrast, had overseen only two Level III facilities, which confine less "dangerous" offenders.  Document No. 39 ex. B ¶ 5.[6]  Second, Johnson avers that he selected Doug Dretke ("Dretke") to fill the Director of Correctional Institutions position because "I believed that of all applicants, Doug Dretke demonstrated the most leadership and management ability and stood the best chance of succeeding in the job." Id. ex. A ¶ 7.  In a separate Inter-Office Communication ("IOC"), Johnson specifically noted Dretke's experience in "supervising five Regional Directors and 73 prison facilities consisting of more than 30,000 employees and 125,000 offenders." Id. ex. A-1.  Plaintiff had no comparable experience at that level. Finally, Mosley avers that he selected Warren Moore ("Moore") for the Human Resources Director position due to his "exceptional

---

[6] In an Inter-Office Communication ("IOC") announcing Thaler's promotion, Dretke wrote that he selected Thaler "based on his outstanding performance and his diversity of experience with 11 years as Senior Warden on a variety of units, as well as his education level . . . [and] . . . [h]is responses during the interview demonstrated a strong capability to understand issues from a strong perspective representing the director's office." Id. ex. D-1.

experiences," such as working as a consultant to State of Texas officials and serving successfully as the executive head of Tennessee's counterpart to the Texas Commission of Human Rights, a position that "brought rare experience applicable to the human resources field." Id. ex. E ¶¶ 2-3. These explanations, if believed, constitute legitimate, non-discriminatory reasons for TDCJ's promotions of Thaler, Dretke, and Moore rather than Plaintiff for the three positions. *See* Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 881-82 (5th Cir. 2003) (employer's statement that it chose the "best qualified" candidate was a legitimate, non-discriminatory justification for failure to promote plaintiff).

c.    Plaintiff's Evidence on Pretext

A plaintiff may rebut a defendant's legitimate, non-discriminatory justification that it promoted a candidate with superior qualifications by showing that he, the plaintiff, was "clearly better qualified" for the position. *See* id. at 882; Deines v. Tex. Dep't of Prot. & Regulatory Servs., 164 F.3d 277, 280 (5th Cir. 1999). However, an appealing party faces a very high burden to establish that he is clearly more qualified than the individual who actually received the desired position. *See* Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 357 (5th Cir. 2001) ("[D]ifferences in qualifications are generally not probative evidence of discrimination unless those disparities are

'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" ) (quoting Deines, 164 F.3d at 280-81); Runnels v. Tex. Children's Hosp. Select Plan, 167 Fed. Appx. 377, 383 (5th Cir. Jan. 25, 2006) (unpublished). *See also* Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993) (noting that pretext may be shown only when an applicant not hired for a particular position had credentials so outstanding as to "leap from the record and cry out to all who would listen that he was vastly--or even clearly--more qualified for the subject [position]"). The court "should be reluctant to substitute [its] views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." Id.

In support of his conclusory allegation that he was "best qualified" for the three promotions, Plaintiff avers that "Thaler [who was chosen for Regional Director] had an MBA and I had an MBA *and* an EDD in Educational Leadership." Document No. 48 ex. 1 ¶ 12 (emphasis added). Plaintiff also testified at his deposition that, in comparison to Thaler, "I had not only the best educational background, I had probably a greater diversity in management experience and training." Document No. 39 ex. I at 100. However, an aggrieved applicant's "better education, work experience, and longer tenure with the company do not establish that he is clearly

14

better qualified." *See* <u>Price v. Fed. Exp. Corp.</u>, 283 F.3d 715, 723
(5th Cir. 2002) (affirming summary judgment for defendant
employer). Moreover, the uncontroverted summary judgment evidence
is also that Thaler, unlike Plaintiff whose only Senior Warden
experience was at Level III facilities, had prior experience in
successfully managing a large Level IV maximum security facility
for four years.

Similarly, with respect to the Human Resources position,
Plaintiff conceded in his deposition that "Warren [Moore] had a lot
of federal agency experience," but claimed that he had "more
specific experience in dealing with TDCJ." Document No. 39 ex. I
at 103. Again, Plaintiff's evidence is not of the kind that
"leap[s] from the record" to suggest that Plaintiff was "clearly
better qualified" than Moore, who had successfully served as
executive head of Tennessee's counterpart to the Texas Commission
on Human Rights, and had been a consultant to the State of Texas.
It is not the court's role to "substitute [its] judgment for the
employer in evaluating what types of experience are most valuable
for an employee . . . in the absence of proof that the standards
were not consistently applied or were so irrational or
idiosyncratic as to suggest a cover-up." <u>E.E.O.C. v. La. Office of
Cmty Servs.</u>, 47 F.3d 1438, 1445-46 (5th Cir. 1995) (affirming
judgment as a matter of law for defendant employer).

Finally, Plaintiff understandably makes no effort in the summary judgment record to compare his qualifications to those of Dretke for Director of Correctional Institutions; indeed, Dretke had already been Deputy Director for two years, with responsibility to supervise five Regional Directors and 73 prison facilities consisting of more than 30,000 employees and 125,000 offenders. In sum, Plaintiff, with no evidence that he was *clearly better qualified* than the selected applicants for the three positions, has failed to raise so much as a genuine issue of fact that Defendants' reasons for promoting others were pretextual and that the real reason was race discrimination against Plaintiff. *See* <u>Manning</u>, 332 F.3d at 882 (affirming summary judgment for defendant employer on plaintiff's claim of pretext in promotion case). TDCJ's motion for summary judgment will therefore be granted on his claim of discrimination in denying him the promotions he sought in August, 2003.

Plaintiff also contends that he was denied these promotions in retaliation for having filed an EEOC complaint.[7]   Once again,

---

[7] In further support of his retaliation claim, Plaintiff alleges that he engaged in additional protected activity when he wrote three different IOCs, scattered over the years of 2000, 2001, and 2002, to his supervisors variously complaining of "disparate treatment."  The only one of these "disparate treatment" IOCs to mention race was the one in February, 2002, when Plaintiff complained that two of his subordinates who were black had been transferred from his Unit and were replaced by two white employees, and in which Plaintiff further complained that white employees circumvented the chain of command and that one of his subordinate white employees possibly received preferential treatment.  In none

Plaintiff has submitted no summary judgment evidence to create a genuine issue of fact that the legitimate, non-discriminatory reasons discussed above were pretextual and that the real reason that Plaintiff did not receive any of the promotions was to retaliate against Plaintiff for his having engaged in protected activity. *See, e.g.,* <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 611 (5th Cir. 2005) (affirming grant of summary judgment for defendant employer in retaliation case where plaintiff failed to raise a material fact issue that a supervisor "had a retaliatory motive when he ultimately decided to deny her the interim promotion."). Accordingly, summary judgment will be granted on Plaintiff's retaliation claim.

2.   <u>Other Allegedly Discriminatory Treatment</u>

Plaintiff also alleges that the following employment actions that occurred during the years when he was Senior Warden at the Holliday Unit constituted discriminatory treatment against him: (1) his one-month disciplinary probation in conjunction with the Prison incident; (2) his receipt of a Letter of Instruction after

---

of this does Plaintiff raise so much as a genuine issue of material fact that he suffered an adverse employment action as a result of his writing any or all of these three letters. Moreover, Plaintiff's other assertions of "protected activity" fail to meet the statutory definition of that term. *See* 42 U.S.C. § 2000e-3(a) (under Title VII, an employee has engaged in protected activity if he has "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

he denied a religious volunteer access to his Unit; (3) his supervisor's refusal to permit Plaintiff to leave for lunch like other TDCJ employees; (4) the requirement that he respond to two or three anonymous complaints filed against him; (5) the overturning of some of his disciplinary decisions; (6) the transfer of two black employees under his supervision and their replacement by white employees; and (7) the decision to transfer Plaintiff from his Unit to another facility where he would continue to serve as a Senior Warden.

"[I]n discriminatory-treatment cases . . . [f]irst the plaintiff must establish a prima facie case of discrimination." Landry v. Potter, 2006 WL 1342795, at *1 (5th Cir. May 17, 2006) (unpublished) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000)). To make a prima facie case, Plaintiff must show he "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) . . . in the case of disparate treatment, show[ ] that others similarly situated were treated more favorably." Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999) (internal quotation omitted)). An adverse employment action must be "[a] tangible employment action constitut[ing] a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 118 S. Ct. 2257, 2268 (1998); Stewart v. Missouri Pac. R.R. Co., 121 Fed. Appx. 558, 562-63 (5th Cir. Jan. 27, 2005) (unpublished).   "Where pay, benefits and level of responsibility remain the same, the plaintiff has not been subjected to an ultimate employment decision and cannot maintain a claim of discrimination." U.S. v. Matagorda County, 181 F. Supp. 2d 673, 681 (S.D. Tex. 2002) (citing Watts v. Kroger Co., 170 F.3d 505, 512 (5th Cir. 1999)). *See* Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (applying Title VII standard to 42 U.S.C. § 1981 claim).

As a matter of law, none of Plaintiff's claims of disparate treatment discussed in this Section III.B.2 of this Memorandum involved tangible employment actions that significantly changed Plaintiff's employment status.   Even the most serious of these, Plaintiff's one-month probation received in conjunction with the Prison incident, did not alter his employment status in any tangible manner, as Plaintiff continued to receive his same full pay and benefits and held and daily discharged all of his same job responsibilities throughout the one-month probationary period. *See* Stewart, 121 Fed. Appx. at 562-63 (affirming grant of summary judgment for defendant employer in a Title VII discrimination and retaliation case, holding that "a sanction of one year of probation

was not an ultimate employment decision," where employee's pay and responsibilities remained unaffected); <u>Ellerth</u>, 118 S. Ct. at 2268-69.[8]

Plaintiff's assorted other disparate treatment claims also do not rise to the level of tangible employment decisions constituting significant changes in his employment status. Specifically, letters of reprimand written to Plaintiff are not adverse employment actions. *See* <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 708 (5th Cir. 1997) ("[H]aving documented reprimands in [Mattern's] file may have increased the chance that she would *eventually* suffer an adverse employment action, but, like the actions in <u>Dollis</u>, neither were they ultimate employment decisions

---

[8] Plaintiff argues that "probation has real meaning in the employment context at TDCJ" because an employee may not be promoted while on probation. Document No. 47 at 6. Plaintiff does not allege or present summary judgment evidence, however, that he applied for or intended to apply for any other TDCJ position during the one-month probation period in October/November 2002, nor does he allege or present evidence that any position that would be a promotion from Senior Warden was even open for applications during that one month period. It was not until August, 2003, that Plaintiff sought the four promotions discussed above.

To the extent that Plaintiff asserts that TDCJ discriminated against him by investigating the alleged assault that occurred during the Prison incident, this claim fails because an investigation of this type is not an adverse employment action. *See, e.g.,* <u>Cardenas-Garcia v. Tex. Tech Univ.</u>, 118 Fed. Appx. 793, 794 (5th Cir. Dec. 14, 2004) (unpublished) ("[I]nvestigations, therefore, do not qualify as ultimate employment actions" in Title VII discrimination and retaliation cases) (citing <u>Foley v. Univ. of Houston Sys.</u>, 355 F.3d 333, 340 (5th Cir. 2003); <u>Hockman v. Westward Commc'ns, L.L.C.</u>, 282 F. Supp. 2d 512, 525 (E.D. Tex. 2003), *aff'd*, 407 F.3d 317 (2004) (same); <u>Mora v. Ashcroft</u>, 142 Fed. Appx. 206, 207 (5th Cir. Jul. 26, 2005) (unpublished) (same).

nor did they rise above having mere tangential effect on a possible future ultimate employment decision."); Allen v. Michigan Dep't of Corrections, 165 F.3d 405, 409-10 (6th Cir. 1999) (holding that counseling memoranda and close monitoring do not constitute adverse employment actions).   Likewise, Plaintiff has cited no authority for his conclusory allegation that he suffered an adverse employment action when he "could not go to lunch as other Wardens." Cf. Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000) (affirming summary judgment for defendant employer on retaliation claims where employees "have not shown" that supervisor's refusal to allow them to "tak[e] their breaks together after they complained to the EEOC" constituted an adverse employment action). Moreover, Plaintiff fails to demonstrate how other management decisions of which he complains--personnel decisions to require Plaintiff to respond to two or three anonymous complaints, to overturn some of Plaintiff's disciplinary decisions, and to reassign two black prison staff members[9] under Plaintiff's

---

[9]   The uncontroverted summary judgment evidence is that one of these employees was an assistant warden, and TDCJ occasionally transfers assistant wardens between prisons.   The other reassigned black employee was Major Kathryn Bell ("Bell"), who herself requested to be transferred from Plaintiff's Unit--a request that Cockrell approved.   Document No. 39 ex. B ¶ 10.

Plaintiff testified at his deposition that he was told that Major Price, Bell's replacement, "had a Confederate flag on his shoulder," but he admitted that he never saw the purported tattoo. Id. ex. I at 75.   Defendants have correctly objected to this statement as inadmissible hearsay, and it is not considered.   See FED. R. EVID. 801(c); Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995).

supervision--rose to the level of an adverse employment action for purposes of establishing Plaintiff's prima facie case of disparate treatment under Title VII. *Cf*. <u>Roberson v. Game Stop/Babbage's</u>, 152 Fed. Appx. 356, 361 (5th Cir. Oct. 14, 2005) (unpublished) ("[A]dverse employment actions are ultimate employment decisions, not the day-to-day decisions made in the context of the employment relationship."). Finally, Plaintiff has not shown how his proposed lateral transfer from the Holliday Unit to another unit, in accordance with TDCJ's practice of periodically rotating wardens, would constitute  an adverse employment action when he would continue to serve as a Senior Warden with the same job title, benefits, duties, and responsibilities. *See* <u>Hockman</u>, 407 F.3d at 331 ("A purely lateral transfer cannot constitute an adverse employment action . . . where the new position ha[s] 'the same job title, benefits, duties, and responsibilities' as the old position.") (quoting <u>Burger v. Cent. Apt. Mgmt., Inc.</u>, 168 F.3d 875, 879 (5th Cir. 1999)).[10]

---

[10] Plaintiff admitted at his deposition that "[r]otating wardens does happen," though he disagrees with the practice. Document No. 39 ex. I at 28, 31-32. Johnson and Dretke aver in their affidavits that, for security and performance reasons, TDCJ often transfers Senior Wardens between units after five years of service. <u>Id.</u> ex. A ¶¶ 5-6; ex. D ¶ 7. Here, Plaintiff had served as Senior Warden at the Holliday Unit for over six years when his transfer was scheduled, and Dretke avers that Plaintiff's transfer "would have been consistent with our practices and would not have caused him any loss in pay or change in title." <u>Id.</u> ex. D ¶ 7. Although Plaintiff testified at his deposition that he knew of no written policy or ordinary practice in effect that dictated the amount of time a warden served at a particular facility--and

In sum, viewing the evidence of Plaintiff's claimed other discriminatory treatment in the light most favorable to Plaintiff, Plaintiff has failed to raise a genuine issue of material fact that TDCJ took any adverse action toward Plaintiff that involved "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," or that TDCJ took any other action constituting "a significant change in [Plaintiff's] employment status." *See* Ellerth, 118 S. Ct. at 2268.  As such, because Plaintiff has failed to establish a prima facie case of disparate treatment with respect to these challenged acts, TDCJ's motion for summary judgment will be granted.

4.  Hostile Work Environment

Plaintiff also contends that he was subjected to a racially hostile work environment.  To establish a prima facie case on this

---

instead the time served at each site was subject to "many variations," id. ex. I at 31--, Plaintiff presents no summary judgment evidence to controvert Dretke's affidavit that Plaintiff's transfer was consistent with TDCJ's practice of rotating wardens. In his Response to Defendants' Motion for Summary Judgment Plaintiff for the first time contends that "he had a medical condition and TDCJ had permitted individuals with medical conditions to remain at their facilities for extended periods of time." Document No. 47 at 6.  However, Plaintiff neither alleges nor presents any evidence that he informed his supervisors of a "medical condition" that would have exempted him from TDCJ's warden rotation practice.  Plaintiff has failed to raise a genuine issue of material fact that his lateral transfer to another facility constituted an adverse employment action.

claim, Plaintiff must show: (1) that he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment, and (5) Defendant knew or should have known of the harassment, yet failed to take prompt remedial action. <u>Felton v. Polles</u>, 315 F.3d 470, 483-84 (5th Cir. 2002).[11]   In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."   <u>Harris v. Forklift Sys., Inc.</u>, 114 S. Ct. 367, 371 (1993).   For harassment to be actionable, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Ramsey v. Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002); <u>Shepherd v. Comptroller of Public Accounts</u>, 168 F.3d 871, 874 (5th Cir. 1999) ("Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace.") (quoting <u>Weller v. Citation Oil & Gas Corp.</u>, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 117 S. Ct.

---

[11]   Because Plaintiff alleges that he was harassed by supervisors with immediate or successively higher authority over him, *see* Document No. 47 at 7, he must satisfy only the first four elements. *See* <u>Celestine</u>, 266 F.3d at 353-54.

682 (1997)).  The Supreme Court has held that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  <u>Faragher v. City of Boca Raton</u>, 118 S. Ct. 2275, 2283 (1998) (internal citation omitted).  Rather, the environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  <u>Id.</u> (applying the standard to sexual harassment case, but noting that the standards for racial and sexual harassment overlap).

Plaintiff's hostile work environment claim is essentially a composite reiteration of his several individual complaints discussed above, which in his affidavit he describes as racial "harassment":

> The harassment complained of was racial because of Cockrell and Johnson's race [white], the race of those removed from under my supervision [black] and who they were replaced with [white] without my input, how I was required to respond to anonymous complaints from white employees accusing me or [sic] discrimination and how I was not given other privileges of my employment like other Wardens such as the ability to leave the unit during the day when another employee of sufficient rank was thee [sic] and on duty.  I was disciplined for violating a none-existent [sic] policy for an incident that happened when I was not there.  Janie Cockrell and Gary Johnson are white.  Whites are chosen over me who were less qualified for positions, and I was prevented from being promoted during the time I was on probation for violating the none-existent [sic] policy.  I was forced to resign.

Document No. 48 ex. 1 ¶ 23.  Plaintiff also avers that (1) he "was
extremely closely monitored on everything"; (2) he received an
allegedly unfounded Letter of Instruction from Lepher Jenkins
("Jenkins"), his black supervisor; (3) his white subordinates were
allowed to complain outside of the Chain of Command; and (4) some
of his disciplinary decisions were overturned by his supervisors,
some of whom were white.  Id. ¶ 14.[12]  Viewing the uncontroverted
summary judgment evidence in the light most favorable to Plaintiff,
Plaintiff has failed to adduce evidence that any of the alleged
harassing events were based on race or had a racial character or
purpose.  *See, e.g.,* Harris-Childs v. Medco Health Solutions, Inc.,
No. 4:03-CV-77-Y, 2005 WL 562720, at *6 (N.D. Tex. Mar. 10, 2005)
("To establish a *prima-facie* case of racial harassment, the
plaintiff must provide evidence that the complained-of conduct had
a racial character or purpose."), *aff'd*, 2006 WL 616022 (5th Cir.
2006) ("[W]e agree with the district court that Appellant has
failed to show that the harassment was racially based"); Hardin v.

_____

[12] Plaintiff also conclusorily assumes in his affidavit that
Defendants "must have" presented a case about Plaintiff to a grand
jury in the wake of the Prison incident.  Document No. 48 ex. 1
¶ 20.  Plaintiff avers that he bases this speculation on Davis's
affidavit.  Id.  Davis makes no statement in his affidavit,
however, that Defendants presented a case about Plaintiff to the
grand jury; rather, he states that he appeared as a witness at a
grand jury investigation of *Plaintiff's subordinates and the Unit's
individual employees*.  *See* id. ex. 1a ¶ 7.  Indeed, Kelly Weeks,
the state prosecutor before the Grand Jury, declares under oath
that Plaintiff was not listed as a suspect in the criminal
prosecution of the Prison incident, and Weeks sought no indictment
against Plaintiff. Document No. 39 ex. F ¶¶ 2-3.

S.C. Johnson & Son, Inc., 167 F.3d 340, 345 (7th Cir. 1999) (noting that, although the challenged conduct need not be "explicitly" racial, it must have a "racial character *or purpose* to support a Title VII claim.") (emphasis in original); Padilla v. Carrier Air Conditioning, 67 F. Supp. 2d 650, 661 (E.D. Tex. 1999). Plaintiff attempts to impart a racial character to these events by arguing, *inter alia*, that the two subordinate employees transferred to his Unit were white, that the employees chosen for promotions over Plaintiff were white, and that he was forced to respond to anonymous complaints filed by employees that he surmises to be white. However, TDCJ's uncontroverted summary judgment evidence demonstrates that these decisions and complained-of actions were not based on race.   Plaintiff's conclusory allegations, speculation, and unsubstantiated assertions that the events had a racial character or purpose to harass him are not sufficient to raise a fact issue or to defeat a properly-supported motion for summary judgment. *See* Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) (explaining that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at the summary-judgment stage of an employment-discrimination case); Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 403 (5th Cir. 2001) ("This court has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to

warrant judicial relief.") (quoting <u>Bauer v. Albemarle Corp.</u>, 169 F.3d 962, 967 (5th Cir. 1999)).  Because Plaintiff has failed to raise so much as a genuine issue of material fact that he experienced harassment that was racially motivated or that he was subjected to an objectively hostile work environment, TDCJ is entitled to summary judgment on this claim.  *See* <u>Harris-Childs</u>, 2005 WL 562720, at *6 (awarding summary judgment to defendants where there was "no connection between the allegedly harassing incidents and [Plaintiff]'s protected status").

C.   <u>Johnson's and Cockrell's Motion for Summary Judgment</u>

1.   <u>Intentional Infliction of Emotional Distress</u>

Plaintiff contends that Johnson's and Cockrell's conduct throughout his employment amounts to an intentional infliction of emotional distress.  Once again reciting most of the several separate complaints discussed above, Plaintiff claims that Johnson: (1) overturned a disciplinary of one of Plaintiff's supervisors who had caused "racial problems" at the Unit; (2) approved the transfer of two black employees from the Unit; (3) instructed the Personnel Director to investigate Plaintiff without his knowledge; (4) required Plaintiff to respond to two or three anonymous complaints; and (5) refused to take "immediate and appropriate" corrective action when Plaintiff complained about receiving a Letter of Instruction and being required to respond to anonymous

complaints.  Document No. 47 at 2; Document No. 48 ex. 1 ¶¶ 5, 15.
Likewise, Plaintiff claims that Cockrell: (1) required Plaintiff to
respond to two or three anonymous complaints; (2) approved the
transfer of two black employees from the Unit; (3) selected a
disciplinary hearing authority who "inappopriate[ly]" conducted
Plaintiff's Prison hearing and "was not the closest person at that
level to the incident to hold the hearing"; (4) "knowingly
permitted" TDCJ to proceed against Plaintiff without due process
for the Prison incident; (5) permitted Plaintiff to be disciplined
for the Prison incident when it was "clear that [Plaintiff] was not
there and [Cockrell] clearly must have been aware that there was no
policy for [Plaintiff] to violate"; (6) wrote a memo deciding "not
to proceed against [Plaintiff's] subordinates who were sustained
[for the Prison incident] and just [Plaintiff]"; and (7) approved
the decision to transfer Plaintiff from the Unit "even though I had
a medical condition which she had recognized for others as a reason
not to force them to move."  Document No. 48 ex. 1 ¶¶ 17, 20.

    To establish a claim for intentional infliction of emotional
distress in Texas, a plaintiff must show that: (1) the defendant
acted intentionally or recklessly; (2) the conduct was extreme and
outrageous; (3) the actions of the defendant caused the plaintiff
emotional distress; and (4) the resulting emotional distress was
severe.  Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62,
65 (Tex. 1998).  Johnson and Cockrell move for summary judgment

because, *inter alia*, they did not engage in conduct that was extreme and outrageous. Under Texas law, conduct is extreme and outrageous only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." GTE Sw., Inc. v. Bruce, 998 S.W.2d 605, 611 (Tex. 1999) (internal citations omitted). Ordinary employment disputes are not sufficient to state a claim for intentional infliction of emotional distress. *See* id. at 612. Only in the most unusual of circumstances does an employer's conduct move "outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct. Id. at 613.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to raise so much as a genuine issue of material fact that either Johnson or Cockrell engaged in conduct that was extreme and outrageous. *See, e.g.,* Harris-Childs, 2005 WL 562720, at *9 (finding defendants' conduct not extreme and outrageous under "rigorous" standard where plaintiff alleged, among other things, unjustified disciplinary actions; retaliation for complaining of harassment; unilateral changes in her job title, department, and seniority date; and disparate treatment with respect to hours, performance reviews, and policy application); Stewart v. Houston Lighting & Power Co., 998 F. Supp. 746, 748-49 (S.D. Tex. 1998) (noting that "mere employment disputes" such as

30

unfair evaluations, being "chewed out" by a supervisor, being repeatedly put in positions where her ability as an operator was called into question, promotion denials, and being "forced to resign" do not constitute extreme and outrageous conduct); Diamond Shamrock Ref. & Mktg. Co. v. Mendez, 844 S.W.2d 198, 202 (Tex. 1992) ("falsely depicting [employee] in the community as a thief" is insufficient to constitute outrageous behavior).  Because the conduct alleged by Plaintiff does not support any inference that either Johnson or Cockrell ventured into the realm of extreme and outrageous conduct, Johnson's and Cockrell's motions for summary judgment on Plaintiff's intentional infliction of emotional distress claim will be granted.

2.   Defamation

Finally, Plaintiff conclusorily alleges that Johnson and Cockrell defamed him.  Under Texas law, to prevail on a cause of action for defamation, a plaintiff must demonstrate that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either (a) actual malice, if the plaintiff was a public official or public figure, or (b) negligence, if the plaintiff was a private individual, regarding the truth of the statement.  WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998), cert. denied, 119 S. Ct. 1358 (1999).  Moreover, "[d]efamation claims must specifically state the

31

time and place of the publication." <u>Jackson v. Dallas Indep. Sch.</u>
<u>Dist.</u>, No. CIV. A. 398-CV-1079, 1998 WL 386158, at *5 (N.D. Tex.
1998), *aff'd*, 232 F.3d 210 (5th Cir. 2000); <u>Garrett v. Celanese</u>
<u>Corp.</u>, No. 3:02-CV-1485-K, 2003 WL 22234917, at *4 (N.D. Tex.
2003), *aff'd*, 102 Fed. Appx. 387 (2004).

Plaintiff has neither alleged nor presented evidence of any
specific defamatory statement(s) made by Johnson, and Plaintiff's
claim against Johnson will be dismissed.  Moreover, Plaintiff
offers no defense to Defendants' argument that Cockrell did not
defame Plaintiff during a personnel meeting she conducted with
Plaintiff and his immediate supervisor after she received employee
grievances about Plaintiff's wrongdoing.  *See* Document No. 39 at
11-12.  Undefended claims may be regarded as abandoned.  *See, e.g.,*
<u>Scales v. Slater</u>, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting
that plaintiff abandoned her disparate impact claim in district
court when she neither contested defendant's arguments for
dismissal of that claim nor suggested that her statistical evidence
demonstrated pretext); <u>Thompson v. Exxon Mobil Corp.</u>, 344 F. Supp.
2d 971, 976 (E.D. Tex. 2004) (holding that where defendant fully
briefed all of plaintiffs' claims on summary judgment--and
plaintiffs only responded on two claims--plaintiffs were deemed to
have abandoned their remaining claims).  Regardless, Plaintiff has
presented no evidence that Cockrell published any specific
statement about Plaintiff that was defamatory.  Because no genuine

32

issue of material fact has been raised on Plaintiff's defamation claim against Cockrell, summary judgment will also be granted on this claim.

IV.   <u>Order</u>

Based on the foregoing, it is

ORDERED that Defendants Texas Department of Criminal Justice's, Gary Johnson's, and Janie Cockrell's Motion for Summary Judgment (Document No. 39) is GRANTED, and Plaintiff Watkins's case is DISMISSED on the merits.

The Clerk will enter this Order and provide a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 6th day of June, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE